UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ACTIAN CORPORATION, *Plaintiff* | § § § § § § § § § § § |
| v. | Case No. 1:19-CV-522-LY |
| GREEN SHIELD CANADA, *Defendant* | |

# REPORT AND RECOMMENDATION
# OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
    UNITED STATES DISTRICT JUDGE

Before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Under the Doctrine of Forum Non Conveniens, filed by Defendant Green Shield Canada on June 3, 2019 (Dkt. No. 15). Plaintiff Actian Corporation filed a Response (Dkt. No. 18)[1] and Defendant filed a Reply (Dkt. No. 21). The District Court referred the above motions to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.    BACKGROUND

The parties do not dispute the underlying facts. Plaintiff Actian Corporation ("Actian") is a Delaware Corporation with a principal place of business in California and an office in Texas. (Orig. Pet., Dkt. 1-2 ¶ 2). Defendant Green Shield Canada ("Green Shield") is a Canadian company with

---

[1] Actian also filed a Supplement containing exhibits that were inadvertently omitted from the original response. (Dkt. No. 19).

a principal place of business in Ontario, Canada. (Orig. Pet., Dkt. 1-2 ¶ 3). Green Shield has no presence in the United States. (Rondinone Decl., Dkt. 15-1 ¶ 2). Green Shield is a not-for-profit benefits carrier incorporated under a Federal Act of the Parliament of Canada to provide drug, dental, extended healthcare, vision, hospital, and travel benefits to Canadian individuals and companies. (*Id.* ¶ 3). Its customers and offices are located exclusively in Canada. (*Id.*). It has no agent for service of process in the United States and was served in this action through the Hague Convention. (*Id.* ¶ 4; Orig. Pet, Dkt. 1-2 ¶ 3).

Actian is the successor in interest to a series of companies that have licensed software to Green Shield for the past 17 years. (Orig. Pet., Dkt. 1-2 ¶ 2; Mot. Dismiss, Dkt. 15 ¶ 5). In 2002, Green Shield first licensed data integration software ("the Software") from an Austin-based company called Pervasive Software ("Pervasive"). (Org. Pet., Dkt. 1-2, ¶¶ 6-9; Rondinone Decl., Dkt. 15-1 ¶ 5). Pervasive upgraded the Software periodically and licensed it to Green Shield under several different names, including Data Junction, Data Integrator, and DataConnect. (*Id.*; *see also* Bradberry Decl., Dkt. 18-1 ¶ 8). Green Shield paid an initial license fee of approximately $50,000 in 2002, with subsequent annual license fees increasing from approximately $5,000 to $15,000. (*See* Rondinone Decl., Dkt. 15-1 ¶ 6). In 2013, Actian acquired Pervasive and continued to provide maintenance and support services from Austin. (*Id.* ¶ 6; Resp., Dkt. 18, at 3 n.2).[2] Green Shield used the Software to enroll individuals in benefit plans and process their benefit claims. (Mot. Dismiss, Dkt. 15, at 5). The Software translates customer enrollment data into a format that Green Shield's internal systems can process. (*Id.* 5-6).

---

[2] Green Shield submits that in 2018, Actian was acquired by HCL Technologies, a company with headquarters in India, and Sumeru Equity Partners, a private equity firm with headquarters in California. (Mot. Dismiss, Dkt. 15, at 3 n.2). Actian does not address or dispute this.

The terms of all the licenses and services Green Shield purchased from Actian and its predecessors were set by end user license agreements (the "License Agreements"), which are governed by Texas law. (Mot. Dismiss, Dkt. 15, at 3; Resp., Dkt. 18, at 4).[3] The License Agreements, however, contain no clauses designating a venue, consenting to jurisdiction in any venue, or setting a means of dispute resolution. (Mot. Dismiss, Dkt. 15-1, at 3).[4]

On September 28, 2018, Actian sent a letter to Green Shield advising that it had come to Actian's attention that Green Shield was using the Software "outside the scope of the software license agreement" by using the Software "to benefit third parties." (Notice Letter, Dkt. 15-1, at 28 (citing License Agreement, § 2)). Actian proposed technology "upgrades" for a one-time cost of $900,000 and $300,000 annually. (*Id.* at 29). After Green Shield declined, Actian filed this action in Texas state court on April 10, 2019. (Orig. Pet, Dkt. 1-2, at 1). Green Shield timely removed to this Court. (Not. Removal, Dkt. 1). Green Shield now moves to dismiss this action for lack of personal jurisdiction under Rule 12(b)(2) or, in the alternative, under the doctrine of forum non conveniens. (Dkt. No. 15). The Court considers each in turn.

## II. PERSONAL JURISDICTION

### A. Legal Standard

The Federal Rules of Civil Procedure allow a defendant to assert lack of personal jurisdiction as a defense to suit. FED. R. CIV. P. 12(b)(2). On such a motion, "the plaintiff bears the burden of

---

[3] Green Shield argues that the License Agreements were not negotiated between the parties, characterizing them as "clickwrap" end user license agreements that "require the end user [Green Shield] to accept the terms of use chosen by the seller [Actian] before using the software, typically by scrolling to the end of the agreement and clicking a box labeled 'I accept' or 'I agree.'" (Rondinone Decl., Dkt. 15-1 ¶ 7). They are customary in commercial software. *Id.* Green Shield's Chief Information Officer testifies in his declaration that: "We did not negotiate any terms with Pervasive or Actian, and we 'accepted' the [End User License Agreement terms] by clicking a box on a computer in our headquarters in Ontario." (*Id.*).

[4] Actian does not dispute that the License Agreements do not designate Texas or any other jurisdiction as the venue of choice between the parties. (*See* Resp., Dkt. 18).

3

establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Where, as here, the Court rules on the motion without an evidentiary hearing, the plaintiff need only present a prima facie case that personal jurisdiction is proper. *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 488 (5th Cir. 2018). "Proof by a preponderance of the evidence is not required." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (internal citation omitted)).

Courts may consider "not only the well-pleaded allegations of the complaint . . . but also factual showings made by way of depositions [and] affidavits." *Trois*, 882 F.3d at 488 (quoting *Simon v. United States*, 644 F.2d 490, 497 (5th Cir. 1981)). "When a trial court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . it must resolve any factual conflicts in favor of the plaintiff." *Lewis v. Fresne*, 252 F.3d 352, 356 (5th Cir. 2001) (citing *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000)). Nevertheless, a court "need not credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

In a diversity case, a federal court has jurisdiction if "(1) the state's long-arm statute allows it; and (2) exercising jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment." *Halliburton*, 921 F.3d at 539 (quoting *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989) (internal quotation marks omitted)). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Id.* (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).

Federal due process requires a plaintiff to prove two things. *Halliburton*, 21 F.3d at 539. "First, the plaintiff must show that the non-resident defendant 'purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state.'" *Id.* (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal citation omitted)). "Second, the plaintiff must show that the 'exercise of jurisdiction . . . does not offend traditional notions of fair play and substantial justice.'" *Id*. Courts reach this second prong only "after establishing the defendant's minimum contacts with the forum state." *Id.* at 544-45.

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Id.* at 539 (quoting *Lewis*, 252 F.3d at 358). Because Actian asserts that Green Shield is subject to only this Court's specific jurisdiction, (Response, Dkt. No. 18, at 6), the Court addresses personal jurisdiction on that theory alone.

Specific jurisdiction applies when a non-resident defendant "'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id.* at 539-40 (quoting *Panda*, 253 F.3d at 868 (internal citation omitted)). Courts consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 544 (citation omitted).

Specific jurisdiction must be based on more than the "random, fortuitous, or attenuated" contacts a defendant makes by interacting with people affiliated with the forum state. *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985). Accordingly, the plaintiff "cannot be the only link between the defendant and the forum.

Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 at 285. "[P]ersonal jurisdiction is proper only when the relationship arises 'out of contacts that the defendant . . . creates with the forum state,' and not the defendant's contacts with the plaintiff." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 213 (5th Cir. 2016) (quoting *Walden*, 571 U.S. at 285). Conduct unrelated to a plaintiff's claims is irrelevant to the exercise of specific personal jurisdiction. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 (5th Cir. 2006) (stating that the Due Process Clause bars the exercise of specific jurisdiction over claims that do not arise out of the defendant's forum contacts).

## B. Whether Actian Establishes a Prima Facie Case That This Court Has Personal Jurisdiction Over Green Shield

Green Shield moves to dismiss for lack of personal jurisdiction, submitting evidence that it has no physical or business presence in the United States (Rondinone Decl., Dkt. 15-1 ¶¶ 3-4); none of its employees or executives traveled to Texas to negotiate the purchase of the software or any aspect of the License Agreements (*id.* ¶ 5); no employee or executive has ever traveled to Texas in connection with the License Agreements or the software, or for any business purpose (*id.* ¶ 10); it has never maintained any office, place of business, or contacts in Texas (*id.* ¶ 4); and it has never solicited business in Texas (*id.*).[5]

Actian has the burden to establish a prima facie case for this Court's personal jurisdiction over Green Shield. *See Trois*, 882 F.3d at 488. Actian argues that Green Shield purposefully availed itself of the benefits of Texas law by (1) licensing the Software from a Texas company, (2) purchasing annual maintenance and support services performed in Texas, and (3) entering into

---

[5] Green Shield offers additional examples of contacts that the company has never made with Texas, *e.g.*, the company has never owned property in Texas. (*See* Rondinone Decl., Dkt. 15-1 ¶¶ 3-10).

a series of contracts governed by Texas law. (Resp., Dkt. 18, at 6). The Court addresses each of these arguments.

### 1. Licensing Software from a Texas Company

Green Shield licensed the Software from Pervasive, a Texas-based company, for seventeen years. (*See* Orig. Pet., Dkt. 1-2 ¶¶ 6-9; Rondinone Decl., Dkt. 15-1 ¶ 6). Actian is not a Texas company,[6] but argues that Green Shield purposefully established minimum contacts with Texas by participating in a "long-term business relationship" through a series of contracts with Pervasive. (Resp., Dkt. 18, at 6-7).

Green Shield's long-term business relationship with a Texas company does not establish specific jurisdiction. "[M]erely contracting with a resident of Texas is not enough to establish minimum contacts." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)). The Fifth Circuit and the Supreme Court have made clear that "personal jurisdiction is proper only when the relationship arises 'out of contacts that the defendant . . . creates with the forum state,' and *not the defendant's contacts with the plaintiff*." *Int'l Energy Ventures*, 818 F.3d at 213 (quoting *Walden*, 571 U.S. at 285) (emphasis added); *see also Edwards v. Anderson*, No. 4:17-CV-3115, 2018 WL 1172607, at *2 (S.D. Tex. Mar. 5, 2018) ("Plaintiffs incorrectly focus on their own ties with Texas to try to impute jurisdiction onto the Project Defendants.") (citing *Moncrief Oil*, 481 F.3d at 311; *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983)).

Actian cites *Southwest Offset*, in which the Fifth Circuit held that personal jurisdiction over an Alabama publisher was proper based on a series of contracts with a Texas printing company.

---

[6] As stated above, Actian is a Delaware corporation with a principal place of business in California and an office in Texas. (Orig. Pet., Dkt. 1-2 ¶ 2).

7

(Resp., Dkt. 18, at 7 (citing *Sw. Offset, Inc. v. Hudco Pub. Co.*, 622 F.2d 149, 150 (5th Cir. 1980) (per curiam)). But in *Southwest Offset*, "a substantial part of the expected performance would occur in Texas" because the printer printed orders in Texas. 622 F.2d at 152. Additionally, the Alabama defendant mailed items for processing in Texas as "a necessary part of [its] contract performance." *Id.* In contrast, Green Shield's license agreement could have been performed anywhere—there was no special requirement for the Software to be developed and maintained in Texas. "Given the nature of the work, there's no indication that the location of the performance mattered." *Moncrief Oil*, 481 F.3d at 313 (considering a Texas company's contract to secure financing, provide technical expertise, and invest in a natural gas field in Russia). Here, Actian offers no reason why performance in Texas was relevant to the agreement.

Actian also argues that *Burger King v. Rudzewicz* is "dispositive" because there, the defendant franchisor over a period of 20 years "reached out beyond Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise," which if breached would cause "foreseeable injuries to the corporation in Florida." (Resp., Dkt. 18, at 7-8). But foreseeability of injury in the forum state is not the applicable test. "[F]oreseeability of causing injury in another State . . . is not a 'sufficient benchmark' for exercising personal jurisdiction." *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). "[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 474 (citing *World-Wide Volkswagen*, 444 U.S. at 297). The Supreme Court concluded that the Florida court had specific jurisdiction not simply because a Florida-based company suffered injury from the breach, but because the contract terms "emphasized Burger King's operations are conducted and supervised from the Miami headquarters, that all relevant

notices and payments must be sent there, and that the agreements were made in and enforced from Miami," and noted the defendant's "voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters." *Burger King*, 471 U.S. at 480. The Supreme Court determined that 'the "quality and nature' of his relationship to the company in Florida can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'" *Id.* (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp.,* 444 U.S. at 299). In other words, the foreseeability of injury in Florida arose from the contract's "exacting" requirements for performance and enforcement in Florida. *Id.*; *see also Moncrief Oil*, 481 F.3d at 313 ("Mere foreseeability, standing alone, does not create jurisdiction.").

Here, although it was surely foreseeable to Green Shield that Pervasive, a Texas-based company, would perform at least part of the license agreements in Texas, Actian has not offered any reason why Pervasive's location in Texas was significant or necessary to the parties' agreement. The record indicates that Pervasive was located in Texas, but none of the licensing agreements emphasized performance or enforcement in Texas. Additionally, "[g]iven the nature of the work, there's no indication that the location of the performance mattered." *Moncrief Oil*, 481 F.3d at 313. Actian has not shown any reason to depart from the general rule that "merely contracting with a resident of Texas is not enough to establish minimum contacts." *Id.* at 312 (citing *Latshaw*, 167 F.3d at 211).

### 2. Performance in Texas

Actian does not dispute that the performance of the license agreements in Texas was a unilateral choice by it and its predecessors. (*See* Resp., Dkt. 18). Pervasive performed its obligations from Austin, Texas. (*See* Orig. Pet., Dkt. 1-2 ¶¶ 6-9). Actian continued to conduct maintenance and support services from Austin from its acquisition of Pervasive in 2013 until 2018.

9

(Rondinone Decl., Dkt. 15-1 ¶ 6; Resp., Dkt. 18, at 3 n.2). Over the course of the business relationship, Green Shield communicated with Actian staff in Texas, received invoices from Texas, and directed its payments to "persons located in the State of Texas." (Orig. Pet., Dkt. 1-2 ¶¶ 7, 9). Actian argues that throughout the relationship, "Pervasive and Actian have also sent to Green Shield, from Texas, numerous price quotes and invoices," that Green Shield "knew that these price quotes and invoices came from Texas," and that Green Shield knowingly sent its payments to Texas for both Pervasive and Actian. (Resp., Dkt. 18, at 4 (citing Orig. Pet., Dkt. 1-2 ¶¶ 6-9)).

This argument incorrectly attributes Actian's contacts with Texas to Green Shield. "Jurisdiction must not be based on the fortuity of one party residing in the forum state." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009); *see also Moncrief Oil*, 481 F.3d at 312 ("[A] plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas."). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Stuart*, 772 F.2d at 1191 (quoting *Burger King*, 471 U.S. at 475) (emphasis in original; citations and footnotes omitted). This is because personal jurisdiction arises from "'contacts that the defendant . . . creates with the forum state,' and *not the defendant's contacts with the plaintiff*." *Int'l Energy Ventures*, 818 F.3d at 213 (quoting *Walden*, 571 U.S. at 285) (emphasis added); *see also Edwards*, No. 4:17-CV-3115, 2018 WL 1172607, at *2 ("Plaintiffs incorrectly focus on their own ties with Texas to try to impute jurisdiction onto the Project Defendants.") (citing *Moncrief Oil*, 481 F.3d at 311; *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983)). "[H]owever significant the plaintiff's contacts with the forum

may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Walden*, 571 U.S. at 285 (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

The Fifth Circuit has repeatedly found "insufficient minimum contacts" in cases where an out-of-state defendant contracted with a Texas company and then directed payments and communications in-state pursuant to that contract, where performance in Texas was not part of the contract. *See Halliburton,* 921 F.3d at 544 (citing *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) ("[T]he combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant."); *Int'l Energy Ventures*, 818 F.3d at 213 (finding no minimum contacts where the defendant "(1) did not negotiate the agreement in Texas, (2) did not travel to Texas because of that agreement, and (3) the unwritten agreement did not require performance in Texas"); *see also Monkton*, 768 F.3d at 433 ("a defendant does not have minimum contacts with a state when it does not have a physical presence in the state; it did not conduct business in the state; and the contract underlying the business transaction at issue in the lawsuit was not signed in the state and did not call for performance in the state") (citation omitted); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) ("[T]he exchange of communications between Texas and Oklahoma in the course of developing and carrying out the contract was in itself also insufficient to constitute purposeful availment of the benefits and protections of Texas law" because they "rested on nothing but 'the mere fortuity that [Plaintiffs happen] to be . . . resident[s] of the forum.'") (quoting *Patterson v. Deitze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985)).

Because Actian and Pervasive's performance in Texas was "based on the fortuity of [Pervasive] residing in the forum state," *McFadin*, 587 F.3d at 760, that contact arises from Green Shield's contact with the plaintiff, not with Texas. *See Int'l Energy Ventures*, 818 F.3d at 213 (quoting *Walden*, 571 U.S. at 285); *see also Sysinformation, Inc. v. Prof'l Healthcare Billing Servs.*, No. A-09-CA-619-SS, 2009 WL 4640272, at *2 (W.D. Tex. Nov. 30, 2009) (disregarding contacts with Texas that "rely on [the plaintiff's own performance under the contract]").

### 3. Texas Choice of Law

The only contact in the record that Green Shield *itself* has created with Texas is the choice-of-law provision in the License Agreements. The parties agree that all of Green Shield's License Agreements with Actian and its predecessors have been governed by Texas law. (Mot. Dismiss, Dkt. 15, at 3; Resp., Dkt. 18, at 4). But, as stated above, Actian does not dispute that the License Agreements do not contain any clauses designating a venue, consenting to jurisdiction in any venue, or setting a means of dispute resolution. (Mot. Dismiss, Dkt. 15-1, at 3).

"Choice-of-law provisions and forum-selection clauses are relevant to th[e] minimum-contacts analysis, but they are not dispositive." *Halliburton*, 921 F.3d at 542. An out-of-state defendant "must still satisfy the standard minimum-contacts analysis." *Id.* The Fifth Circuit has directly rejected the proposition that a Texas choice-of-law provision evinces an out-of-state defendant's anticipation of being haled into a Texas court. *See Stuart*, 772 F.2d at 1195. The Fifth Circuit explained: "[W]e note that the plaintiffs misapprehend the very nature of this contractual provision. The provision contemplates a choice of law not forum." *Id.* The Fifth Circuit continued: "At best, the choice-of-law provision may be said to represent yet one more of several contacts, which taken in their totality are insufficient to support personal jurisdiction." *Id.* "Such a provision standing alone would be insufficient to confer jurisdiction." *Id.* (citing *Burger King*, 471 U.S. at 482); *see also Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir.

2012) (quoting *Stuart*, 772 F.2d at 1192) (stating that "the presence of a choice-of-law clause is not sufficient in itself to establish personal jurisdiction when, as here, the contacts do not otherwise demonstrate that the defendant 'purposefully availed himself of the privilege of conducting business in Texas'").

Here, the Texas choice-of-law provision is the only contact in the record that Green Shield *itself* has created with Texas. Every other potential contact arises from Green Shield's contact with Actian and its predecessors, and their unilateral choice to conduct operations in Texas. On these facts, the choice-of-law clause alone is not sufficient for a prima facie showing that Green Shield purposefully established minimum contacts with Texas.

Because Actian has not met this first requirement for federal due process, the Court does not reach the second requirement of "traditional notions of fair play and substantial justice.'" *See Halliburton*, 21 F.3d at 544-45 (explaining that courts only reach the second prong "after establishing the defendant's minimum contacts with the forum state").

### C. Conclusion

For these reasons, the Court concludes that Actian has failed to make a prima facie showing that this Court has specific jurisdiction over Green Shield. The undersigned therefore recommends that the District Court grant Defendant's motion to dismiss for lack of personal jurisdiction.

As the Court finds that dismissal is appropriate under Rule 12(b)(2) for lack of personal jurisdiction, the Court does not consider the question of dismissal under the doctrine of forum non conveniens.

### III. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Green Shield's Motion to Dismiss (Dkt. No. 15) and **DISMISS** this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 29, 2019.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE